FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

99 MAR 10 PM 3: 30

U.S. DISTRICT COURT
N.D. OF ALABAMA

LEE OTIS GELLINGTON,                    )
                                         )
          Plaintiff,                     )          CV-97-P-2719-W
                                         )
-vs.-                                    )
                                         )
THE CHRISTIAN METHODIST                  )
EPISCOPAL CHURCH, INC.,                  )
                                         )
          Defendant.                     )          MAR 0 9 1999

## MEMORANDUM OPINION

The defendant filed this summary judgment with the court on February 1, 1999. Oral argument was heard on the motion at the March 5, 1999 motion docket. The court thereafter took the motion under submission. For the reasons expressed below, the defendant's motion is due to be granted in full.

### Facts

The plaintiff, Lee Otis Gellington, is an ordained minister with the C.M.E. Church. The C.M.E. Church is a heirarchial religion with an organized episcopacy. As part of the administration of the religion, the C.M.E. Church is divided into ten geographical episcopal districts, with a bishop presiding over each district. In 1986, Richard Oliver Bass, Sr., was selected as bishop of the Fifth Episcopal District which encompasses all C.M.E. churches located in Alabama and Florida.

During 1995-96, the plaintiff worked as an ordained minister in Mobile Alabama. As such, the plaintiff's "supervisor" was Bishop Bass. The crux of the plaintiff's complaint is that he was retaliated against and constructively discharged after he assisted a fellow female minister in drafting

1

a sexual harassment complaint[1] against another member of the clergy. According to the plaintiff, the Bishop transferred him to a less-than-desirable church in West Palm Beach, Florida soon after the Judicial Conference of the C.M.E. Church ruled in favor of the female minister. As a result of the transfer, the plaintiff's salary was fifty (50) percent less than his previous appointment in Mobile, Alabama. Additionally, his family resided in Tuscaloosa, Alabama.

The plaintiff filed this lawsuit in October of 1997, claiming that he was retaliated against and constructively discharged in violation of Title VII.

## Analysis

This case poses the question of whether a federal court may intrude upon the employment practices of a church and its ministers in order to address alleged violations of Title VII. In attempting to answer this question, the court is guided by the long-established constitutional doctrine of the separation of church and state. See Everson v. Board of Education, 330 U.S. 1 (1947).

An employer such as the C.M.E. Church is not immune from suit merely because it is a religious organization. See Polish National Alliance of the U.S. v. N.L.R.B., 322 U.S. 643 (1944) (employers "affecting commerce" cannot escape social legislation merely by asserting that they are a religious entity). For example, a church which discriminates against a clerical employee on the basis of her race or gender is certainly subject to liability under Title VII. However, when the employee claiming violations of Title VII is a minister of the church, the "'wall of separation' between permissible and impermissible intrusion of the State into matters of religion may blur, or become indistinct." McClure v. Salvation Army, 460 F.2d 553 (5th Cir.), cert. denied, 409 U.S. 896 (1972).

---

[1]On April 10, 1996, the plaintiff assisted a female minister, Reverend Little, in drafting a formal complaint to the Judicial Conference of the C.M.E. Church, requesting a declaratory judgment.

2

In this case, however, there is no difficult issue to decide as this court is bound to follow the law as set forth in McClure v. Salvation Army, 460 F.2d 553, cert. denied, 409 U.S. 896 (1972). The McClure case firmly established that Title VII is not applicable to the employment relationship between a church and its minister. Id. In McClure, a Salvation Army female minister asserted claims for gender discrimination against her church with regard to salaries and benefits. Id. Although the plaintiff in the instant case argues that McClure only applies to religious discrimination claims, the McClure court made it quite clear that the application of Title VII to cases involving ministers and churches is violative of the First Amendment. The Fifth Circuit explained:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church.

McClure, 460 F.2d at 558-59.

Because the court finds that the plaintiff's claims fall squarely within the areas of church administration and government, and are therefore subject to the holding in McClure, the defendant's motion for summary judgment is due to be granted.

Date: March 10, 1999.

Chief Judge Sam C. Pointer, Jr.

3